UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ZIMMERLI TEXTIL AG,

               Plaintiff,

      -against-

ALEXANDER KABBAZ, JOELLE KELLY,
KABBAZ-KELLY & SONS and
LUXURY CLOTHING, LTD.

2:14-cv-01560 (JS)(ARL)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

David D. Lin, Esq. (DL-3666)
LEWIS & LIN LLC
Co-Counsel for Defendants
45 Main Street, Suite 608
Brooklyn, New York 11201
david@ilawco.com
718-243-9323


Patrick B. Fife, Esq. (PF-2927)
TWOMEY, LATHAM, SHEA, KELLEY,
DUBIN & QUARTARARO LLP
Co-Counsel for Defendants
33 West Second Street
P.O. Box 9398
Riverhead, New York 11901
pfife@suffolklaw.com
631-727-2180

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ 3

PRELIMINARY STATEMENT ........................................................................................... 5

LEGAL ARGUMENT .......................................................................................................... 9

  I.   PLAINTIFF'S FIRST, SECOND, THIRD, FOURTH AND FIFTH CLAIMS FOR
RELIEF SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM FOR
TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, DILUTION AND
CYBERSQUATTING .................................................................................................. 9

    A.  Legal Standard .................................................................................................. 9

    B.   Plaintiff's Complaint Fails To Meet The Governing Legal Standard.......................... 12

      1.  The First, Second, Third and Fifth Claims for Relief relating to trademark
infringement, dilution and unfair competition must be dismissed ............................ 13

      2.  The Fourth Claim for Relief for cybersquatting must be dismissed ........................ 16

  II.  PLAINTIFF'S SEVENTH, EIGHTH, NINTH, TENTH AND ELEVENTH CLAIMS
FOR RELIEF SHOULD ALL BE DISMISSED AS DUPLICATIVE OF PLAINTIFF'S
SIXTH CLAIM FOR BREACH OF CONTRACT ........................................................... 18

    A.  The Seventh Claim for Relief for Breach of Implied Contract Must be Dismissed ...... 19

    B.  The Eighth Claim for Relief for Unjust Enrichment Must be Dismissed.................... 20

    C.  The Ninth Claim for Relief for Account Stated Must be Dismissed ............................ 20

    D.  The Tenth Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing
Must be Dismissed.................................................................................................. 21

    E.  The Eleventh Claim for Fraudulent Inducement Must be Dismissed.......................... 22

  CONCLUSION .................................................................................................................. 24

## TABLE OF AUTHORITIES

**CASES**

*Alamo Contract Builders, Inc. v. CTF Hotel Co.*, 242 A.D.2d 643, 644, 663 N.Y.S.2d 42, 43 (2d Dep't 1997) ................................................................................................................. 23

*Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) ................................................................. 9, 10, 14

*Ballet Makers, Inc. v. U.S. Shoe Corp.*, 633 F. Supp. 1328, 1334-35 (S.D.N.Y. 1986) ......... 12, 14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ............................................................... 9

*Bettan v. Geico General Ins. Co.*, 296 A.D.2d 469, 469-470, 745 N.Y.S.2d 545, 546 (2d Dep't 2002) ......................................................................................................................... 20

*Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.1993). ............................................... 6

*Cerberus International, Ltd. v. Banctec, Inc.*, 16 AD3d 126, 791 N.Y.S.2d 28 (1st Dep't 2005) 21

*Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 70 N.Y.2d 382, 388, 521 N.Y.S.2d 653, 656 (1987) ................................................................................................................................ 19, 22

*Deer Park Enterprises, LLC v. Ail Systems, Inc.*, 57 A.D.3d 711, 712, 870 N.Y.S.2d 89, 90 (2d Dep't 2008) ................................................................................................................ 21

*DHB Industries, Inc. v. West-Post Management Co.*, 2005 WL 3076345, at *5 (Sup. Ct. Nassau Co. Nov. 17, 2005) ..................................................................................................... 21, 22

*Diebold Inc. v. Positran Manufacturing, Inc.*, C.A. No. 20-374 GMS at 6, 2002 WL 31129726 (D. Del. Sept. 26, 2002) ............................................................................................... 10, 11

*Dow Jones & Co., Inc. v. Int'l Sec. Exch., Inc.*, 451 F.3d 295, 308 (2d Cir. 2006) ..................... 11

*Erdman Anthony & Assoc. v. Barkstrom*, 298 A.D.2d 981, 747 N.Y.S.2d 670 (4th Dep't 2002). 20

*Gioconda Law Grp. PLLC v. Kenzie*, 941 F. Supp. 2d 424, 430 (S.D.N.Y. 2013) ..................... 16

*Gordon v. Dino De Laurentiis Corp.*, 141 A.D.2d 435, 436, 529 N.Y.S.2d 777, 779 (1st Dep't 1988) ................................................................................................................................... 23

*Grinnell v. Ultimate Realty, LLC,* 38 A.D.3d 600, 600, 832 N.Y.S.2d 244, 245 (2d Dep't 2007) ................................................................................................................................. 20

*Hassett–Belfer Senior Hous. v. Town of N. Hempstead,* 270 A.D.2d 307, 705 N.Y.S.2d 61 (2d Dep't 2001) ................................................................................................................ 20

*ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 165 (2d Cir. 2007) ................................................. 12

*Jacobs Private Equity, LLC v. 450 Park LLC*, 22 A.D.3d 347, 803 N.Y.S.2d 14 (1st Dep't 2005) ................................................................................................................................. 21

*Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013) .................................................... 11

*L.G.B. Inc. v. Gitano Group, Inc.,* 769 F. Supp. 1243, 1244 (S.D.N.Y. 1991) ................. 10, 12, 14

*Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc.*, 979 F. Supp. 224, 230 (S.D.N.Y. 1997) .... 11

Lo v. Curis*,* 29 A.D.3d 525, 815 N.Y.S.2d 131 (2nd Dep't 2006) ............................................. 22

*M. Paladino, Inc. v. Lucchese & Son Contr. Corp.*, 247 A.D.2d 515, 516, 669 N.Y.S.2d 318 (2d Dep't 1998) ................................................................................................................ 20

*Martin H. Bauman Assoc. v. H & M Intl. Transp.*, 171 A.D.2d 479, 485, 567 N.Y.S.2d 404 (1st Dep't 1991) ................................................................................................................ 21

*Matrix Essentials, Inc. v. Emporium Drug Mart, Inc.*, 988 F.2d 587, 590-593 (5th Cir. 1993).. 11, 14

*MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 87 A.D.3d 287, 297, 928 N.Y.S.2d 229 (1st Dep't 2011) ................................................................................................................ 19

*McCoy v. Mitsuboshi Cutlery, Inc.*, 67 F.3d 917, 923 (Fed. Cir. 1995) ..................................... 10

Meehan v. Meehan, 227 A.D.2d 268, 642 N.Y.S.2d 664 (1st Dep't 1996)................................. 23

*Monte Carlo Shirt, Inc. v. Daewoo International (America) Corporation*, 707 F.2d 1054 (9th Cir. 1983) ............................................................................................................................. 12

*Overseas Direct Imp. Co., Ltd. v. Family Dollar Stores Inc.*, 929 F. Supp. 2d 296, 306 (S.D.N.Y. 2013) ............................................................................................................................. 10

*Polymer Tech. Corp. v. Mimran*, 975 F.2d 58, 61 (2d Cir. 1992) ............................................... 11

*Savin Corp. v. Savin Group*, 391 F. 3d 439, 456 (2d Cir. 2004) ............................................... 10

*TechnoMarine SA v. Jacob Time, Inc.*, 12 CIV. 0790 KBF, 2012 WL 2497276 (S.D.N.Y. June 22, 2012) ........................................................................................................................ 11, 13

*TechnoMarine SA v. Jacob Time, Inc.*, 905 F. Supp. 2d 482, 493 (S.D.N.Y. 2012) .................. 13

*Walter H. Poppe General Contracting, Inc. v. Town of Ramapo*, 280 A.D.2d 667, 668, 721 N.Y.S.2d 248, 249 (2d Dep't 2001)................................................................................... 20

*Webadviso v. Bank of Am. Corp.*, 448 Fed.Appx. 95, 97 (2d Cir.2011)...................................... 16

## STATUTES

15 U.S.C. § 1125........................................................................................... 10, 16, 17, 18

15 U.S.C. § 1114................................................................................................ 10, 12, 15

## RULES

CPLR 3016(b)............................................................................................................. 23

CPLR 3211(a)(7) ........................................................................................................ 21

Fed. R. Civ. P. 12(b)(6)........................................................................................... 5, 10

Fed. R. Civ. P. 9(b) ..................................................................................................... 23

Fed. R. Civ. P. 8(a)(2)................................................................................................... 9

Defendants, ALEXANDER KABBAZ, JOELLE KELLY, KABBAZ-KELLY & SONS

and LUXURY CLOTHING, LTD. by and through their undersigned counsel, hereby move this

Court to dismiss the First, Second, Third, Fourth, Fifth, Seventh, Eighth, Ninth, Tenth and

Eleventh Claims for Relief in the Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) on

the grounds that they fail to state a claim upon which relief may be granted. This Motion is made

and based upon the attached Memorandum of Law and Affirmation of Justin Mercer (the

"Mercer Aff."), dated April 25, 2014, filed and served concurrently herewith, all pleadings and

papers on file herein, and upon such oral and documentary evidence as may be presented at a

hearing on this Motion if necessary.

## PRELIMINARY STATEMENT

Defendants Kabbaz-Kelly & Sons and Luxury Clothing, Ltd. are, as set forth in the

Complaint, engaged in the sale and distribution of retail apparel.  The Complaint alleges that

defendants conduct some of their retail apparel business through Internet websites located at

<customshirt1.com> and <zimmerliofswitzerland.com>.  Defendants Alexander Kabbaz and

Joelle Kelly are two of Kabbaz-Kelly & Sons' principals (collectively, all four defendants are

referred to herein as "Kabbaz-Kelly" or "Defendants").

Plaintiff Zimmerli Textil AG ("ZTAG") describes itself has a manufacturer of men's and

women's underwear, lingerie, sleepwear and loungewear, providing goods under the trademark

ZIMMERLI and the trade name ZIMMERLI OF SWITZERLAND.  It is suing the defendants

for use of the alleged marks on goods sold on <customshirt1.com> and

<zimmerliofswitzerland.com> and in various ways that allegedly amount to unfair competition.

However, ZTAG and Kabbaz-Kelly are not in competition.  This action is a simple

contract dispute over an alleged failure to pay invoices dressed up by a disgruntled manufacturer,

ZTAG, who is attempting to use spurious trademark claims and duplicative quasi-contract and fraud claims to circumvent the legal rights of its own licensee and distributor, i.e. Kabbaz-Kelly.

First, as a threshold matter, ZTAG's allegations that Kabbaz-Kelly has committed, *inter alia*, trademark infringement and unfair competition by selling goods through its websites are belied by ZTAG's own allegations that it contracted with Kabbaz-Kelly to sell and distribute genuine Zimmerli-brand apparel for numerous years. Moreover, the Complaint is devoid of any factual allegations of bad faith intent on the part of Kabbaz-Kelly to support a cause of action for cybersquatting under the ACPA. Thus, ZTAG's attempt to use the Lanham Act as a proxy for a simple contractual dispute should be rejected, especially where the Plaintiff fails to sufficiently state a cause of action against any defendant, and must be dismissed.

Second, plaintiff's Seventh through Eleventh Claims for Relief must be dismissed as duplicative and impermissible attempts to recover on its Sixth Claim for Relief for breach of contract. There is no basis for any of these claims under New York law and they must be dismissed.

### STATEMENT OF FACTS[1]

Zimmerli Textil AG ("ZTAG") is an entity organized under Swiss law. Complaint ¶ 1. ZTAG manufactures men's and women's undergarments, nightwear and loungewear. *Id.* ¶ 2. ZTAG is the registrant of US Trademark Reg. 2627343 for the word mark "ZIMMERLI" for "clothing, namely, underwear, nightwear, pullovers, socks, polo shirts, in Class 25," registered on October 1, 2002, and renewed in 2012 (the "ZIMMERLI Mark"). *See* Complaint, a copy of which is annexed to the Mercer Aff. as Exhibit A. On February 18, 2014, ZTAG filed an

---

[1] The facts set forth herein are based on the Complaint, documents attached to the complaint as an exhibit, matters of which judicial notice may be taken, and documents either in plaintiff's possession or of which plaintiff had knowledge and relied on in bringing suit. *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.1993).

application for trademark registration with the USPTO for the word mark "ZIMMERLI OF SWITZERLAND" for "Clothing, namely, underwear, night wear, pullovers, dresses, pajamas, pants, shirts, socks, polo shirts" (the "ZIMMERLI OF SWITZERLAND Applied-for Mark"). Complaint ¶ 15. According to publicly available WHOIS records, ZTAG acquired the domain name <zimmerli.com> on or about November 28, 2008. *See* Mercer Aff. at ¶ 5.  ZTAG uses its website located at <zimmerli.com> to display and disseminate information about its company and Zimmerli-brand apparel. *Id.*

On or about March 10, 2014, ZTAG filed a 12-count Complaint alleging that Kabbaz-Kelly committed, *inter alia*, trademark infringement, unfair competition and a breach of contract by selling goods using the ZIMMERLI Mark and the ZIMMERLI OF SWITZERLAND Applied-for Mark; selling goods through the Accused Domain Names in connection with the sale of Zimmerli-brand merchandise and those of other apparel manufacturers; and failing to pay certain invoices for Zimmerli-brand goods (the "Complaint"). *See* Mercer Aff. at Exhibit A.

In the Complaint, Plaintiff alleges Defendants are "engaged in the sale and distribution of apparel." Complaint ¶¶ 3, 19.  Plaintiff further alleges that Defendants have "sold and distributed Zimmerli-branded apparel on a non-exclusive basis for a number of years." *Id.* ¶ 20.  According to ZTAG, at all relevant times, there was a contract between it and Kabbaz-Kelly for the delivery of "Zimmerli's goods." *Id.* ¶¶ 72-74.  ZTAG further claims that, in or around June 2013 to October 2013, Kabbaz-Kelly accepted "shipments of Zimmerli goods" and failed to pay for the invoices on same. *Id.* ¶ 25.  However, nowhere in the Complaint does ZTAG allege that it ever terminated its sales relationship with Kabbaz-Kelly.  Likewise, ZTAG makes no allegation that any of "Defendants' goods" were anything but genuine, Zimmerli-brand goods that Kabbaz-

Kelly purchased directly from plaintiff ZTAG—*i.e.*, the same Zimmerli-brand goods that comprise the object of ZTAG's contract claim.

Defendants "own, operate and administer" websites located at the following domain names: <CustomShirt1.com> and <zimmerliofswitzerland.com>, through which it conducts its sale and distribution of apparel. Complaint ¶ 19. Defendant Alexander Kabbaz has been the registrant of both of these domain names for over ten years. According to publicly available WHOIS records, Kabbaz registered the domain name <customshirt1.com> on or around December 21, 2001 and <zimmerliofswitzerland.com> since at least as early as December 13, 2003. Mercer Aff. at ¶¶ 6-7. Defendants are also the registrant of the following domain names: <zimmerliofswitzerland.net> and <zimmerli.asia> (these domain names are collectively referred to herein as the "Accused Domain Names")[2]. *See* ¶ 21; Mercer Aff. at ¶ 7.

ZTAG accuses Kabbaz-Kelly of making what it characterizes as a "disparag[ing]" statement about the "Zimmerli brand and marks" on the zimmerliofswitzerland.com website, to wit:

> Since its inception, the Swiss firm's wares were a staple of the best specialty shops. Recently acquired by a venture capital group, Zimmerli is now aiming at a broader department store audience.

Complaint ¶ 23. While ZTAG purports that such statements "deceive the public" by "appearing to be mission or policy statements" of the company, ZTAG does not allege that such statements were false, misleading, confusing or even critical of ZTAG. Furthermore, the "statements" are but excerpts of a much longer "about" section of the website. *See* Mercer Aff. at ¶ 9. Yet the Complaint alleges that by using the Accused Domain Names in connection with the statements, *ipso facto*, Kabbaz-Kelly is likely to cause confusion as to whether ZTAG is sponsoring, has

---

[2] ZTAG also alleges that Defendants own the domain name <zimmerli.co.uk>. Complaint ¶ 21. However, that domain name has not been registered. *See* Mercer Aff. at ¶ 8.

authorized or is somehow affiliated with the products advertised and sold by Kabbaz-Kelly (ironically, genuine, Zimmerli-brand goods), and other similar allegations of consumer confusion. Complaint at ¶¶ 53-54.

In fact, ZTAG made *nearly identical* statements in a July 2013 press release ("Press Release"), disseminated to the public and currently accessible through its website <zimmerli.com>. *See* Mercer Aff. at ¶¶ 10-13. In the Press Release, ZTAG states "Von Nordeck International Holding AG took a majority shareholding [of ZTAG] in 2007." *Id.* at ¶ 11. The Press Release describes Von Nordeck International Holding AG as a "firm which invests in profitable, medium-sized niche purveyors with a focus on long-term commitments," i.e. a venture capital firm. *See id*. ZTAG further adds that it "is engaged in a [brand] repositioning," to "get fit for the future by pursuing a growth strategy." *Id.* at ¶ 12. The Press Release continues, ZTAG's "business strategy focuses on Europe, the USA, Russia and China – markets in which Zimmerli already works in partnership with the best <u>department stores</u>, lingerie stores and fashion shops." *Id.* at ¶ 13. (emphasis added).

## **LEGAL ARGUMENT**

### I. **PLAINTIFF'S FIRST, SECOND, THIRD, FOURTH AND FIFTH CLAIMS FOR RELIEF SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM FOR TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, DILUTION AND CYBERSQUATTING**

#### A. **Legal Standard**

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). Although this rule "does not require 'detailed factual allegations,'" *id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), "[a] pleading that offers 'labels

and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"
*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555); *see also id.* ("Threadbare recitals of
the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain
sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."
*Iqbal*, 556 U.S. at 678. *Iqbal* and *Twombly* highlight two principles: (1) a court is not bound to
accept as true legal conclusions couched as factual allegations and (2) "only a complaint that
states a plausible claim for relief survives a motion to dismiss." *Id.*

In order to state a trademark infringement claim or an unfair competition claim, a
plaintiff must posit factual allegations that the allegedly improper conduct will result in a
"likelihood of confusion." *See* 15 U.S.C. §§ 1114 and 1125; *Savin Corp. v. Savin Group*, 391 F.
3d 439, 456 (2d Cir. 2004) ("[T]he crucial issue in an action for trademark infringement ... is
whether there is any likelihood that an appreciable number of ordinarily prudent purchasers are
likely to be misled, or indeed simply confused, as to the source of the goods in question.");
*Overseas Direct Imp. Co., Ltd. v. Family Dollar Stores Inc.*, 929 F. Supp. 2d 296, 306 (S.D.N.Y.
2013); *Diebold Inc. v. Positran Manufacturing, Inc.*, C.A. No. 20-374 GMS at 6, 2002 WL
31129726 (D. Del. Sept. 26, 2002); *see also L.G.B. Inc. v. Gitano Group, Inc.,* 769 F. Supp.
1243, 1244 (S.D.N.Y. 1991) ("[L]ikelihood of confusion as to the source of the goods in
question is an indispensible element of . . . claims for trademark infringement and unfair
competition, whether based upon § 43(a) of the Lanham Act or New York common law.");
*McCoy v. Mitsuboshi Cutlery, Inc.*, 67 F.3d 917, 923 (Fed. Cir. 1995).

Under federal law's "genuine goods" doctrine[3], "[i]t is well settled that sale of genuine goods without authorization by the trademark holder generally will not constitute trademark infringement." *Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc.*, 979 F. Supp. 224, 230 (S.D.N.Y. 1997); *see Dow Jones & Co., Inc. v. Int'l Sec. Exch., Inc.*, 451 F.3d 295, 308 (2d Cir. 2006) ("[T]he allegation that ISE will use the word "SPDR" in describing the SPDR shares covered by its options does not save the McGraw–Hill complaint from Rule 12(b)(6) dismissal."); *see also Polymer Tech. Corp. v. Mimran*, 975 F.2d 58, 61 (2d Cir. 1992) ("As a general rule, trademark law does not reach the sale of genuine goods bearing a true mark even though the sale is not authorized by the mark owner.").

Thus, a plaintiff cannot establish a likelihood of confusion if the accused sales are of genuine products. *See TechnoMarine SA v. Jacob Time, Inc.*, 12 CIV. 0790 KBF, 2012 WL 2497276 (S.D.N.Y. June 22, 2012) ("[U]ntil TechnoMarine asserts sufficient, factual allegations (versus conclusory assertions) to permit a reasonable inference that the watches sold by Jacob Time are counterfeit, non-genuine or are likely to cause confusion as to their source or affiliation, its trademark infringement claims cannot proceed); *Diebold,* 2002 WL 31129726 at 6; *see also Matrix Essentials, Inc. v. Emporium Drug Mart, Inc.*, 988 F.2d 587, 590-593 (5th Cir. 1993).

The sale, authorized or not, of the genuine article, produced by the trademark holder, cannot lead to confusion. *See, e.g., Polymer Tech. Corp*, 975 F.2d at 62 ("[A] distributor who resells trademarked goods without change is not liable for trademark infringement."); *Ballet Makers, Inc. v. U.S. Shoe Corp.*, 633 F. Supp. 1328, 1334-35 (S.D.N.Y. 1986) (citing *Monte*

---

[3] Even if the "genuine goods" doctrine is considered a defense, this Court may still dismiss this action where the facts are derived from the Complaint itself. *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013) ("Affirmative defenses may be adjudicated on a motion to dismiss where the facts necessary to establish the defense are evident on the face of the complaint.").

*Carlo Shirt, Inc. v. Daewoo International (America) Corporation*, 707 F.2d 1054 (9th Cir. 1983)); *see also L.G.B. Inc.*, 769 F. Supp. at 1250 (dismissing claims for trademark infringement and unfair competition where plaintiff complained of the sale of genuine goods sold by defendant and third parties).

 Precisely because a trademark has a separate legal existence under each country's laws, ownership of a mark in one country does not automatically confer upon the owner the exclusive right to use that mark in another country. Rather, a mark owner must take the proper steps to ensure that its rights to that mark are recognized in any country in which it seeks to assert them. *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 165 (2d Cir. 2007) (rejecting application of "famous marks doctrine" for foreign marks under the Lanham Act).  As such, absent federal registration, a plaintiff cannot seek relief for a trade name under 15 U.S.C. § 1114(1).  Nonetheless, the likelihood of consumer confusion is a common element of both infringement and unfair competition claims.

> B.   **Plaintiff's Complaint Fails To Meet The Governing Legal Standard**

The central inquiries in this action are (1) whether Kabbaz-Kelly sold genuine Zimmerli-brand goods, (2) whether its statements regarding ZTAG were false, and (3) whether it registered or used the Accused Domain Names with the bad faith intent to profit off the ZIMMERLI Mark or the unregistered ZIMMERLI OF SWITZERLAND Applied-for Mark. Plaintiff's claim cannot succeed on the merits because, even under the facts as pled, plaintiff has not stated a cause of action and cannot, as a matter of law, overcome the "first sale" and/or "genuine goods" doctrines evident from ZTAG's own statements.  Moreover, plaintiff cannot show that the defendants' use of the alleged trademarks in connection with the Accused Domain Names is likely to cause confusion, mistake, or deception.  Finally, plaintiff has failed to allege any facts regarding bad

faith.  As such, Defendants are entitled to an order dismissing the First, Second, Third, Fourth and Fifth Claims for Relief.

      1.    <u>The First, Second, Third and Fifth Claims for Relief relating to trademark infringement, dilution and unfair competition must be dismissed</u>

As a threshold matter, ZTAG has failed to adequately plead the elements of trademark infringement, unfair competition, or dilution by tarnishment.  The meager allegations against Defendants, as set forth in Paragraphs 19-23 of the Complaint, are inadequate under federal pleading standards to give rise to actual consumer confusion (as is required for dilution claims), or even the likelihood of confusion (as is required for infringement and unfair competition claims).

ZTAG's Complaint makes reference in Paragraph 22 that Defendants "deceive the public by misusing" the ZIMMERLI Mark and the ZIMMERLI OF SWITZERLAND Applied-for Mark through the Accused Domain Names "to sell consumers products manufactured by competitors."  However, the Complaint fails to allege the substantive elements required to establish consumer confusion as to Zimmerli's Mark, as Plaintiff has done nothing more than state that the public is deceived by the Accused Domain Names. *See TechnoMarine SA v. Jacob Time, Inc.*, 905 F. Supp. 2d 482, 493 (S.D.N.Y. 2012).  This conclusory allegation, even when coupled with the other minimal allegations against Defendants, is insufficient and does not explain how consumers are or could be confused. *See id.*  Nor does the Complaint describe any bad faith intent to profit by Defendants to impose liability or permit an inference of likelihood of confusion.  As such, Plaintiff's Complaint against Defendants must be dismissed.

Moreover, ZTAG's own allegations that Kabbaz-Kelly sold genuine Zimmerli-brand goods defeat any claim for trademark infringement.  As the Second Circuit has stated, "trademark law does not reach the sale of genuine goods bearing a true mark." *Polymer Tech.*

*Corp*, 975 F.2d at 61.  Here, the Complaint alleges that Kabbaz-Kelly sold Zimmerli-brand products, yet contains <u>no</u> allegations that Kabbaz-Kelly's Zimmerli-produced products were not genuine. *See* Complaint at ¶¶ 20, 74.  Plaintiff specifically alleges that Kabbaz-Kelly have "sold and distributed Zimmerli-branded apparel on a non-exclusive basis for a number of years." Complaint at ¶ 20.  Moreover, as described below, ZTAG's breach of contract claims contemplate that ZTAG sold Zimmerli-branded goods to Kabbaz-Kelly. Complaint at ¶¶ 74, 77-79.  Without those genuine Zimmerli goods from ZTAG itself, there would be no breach of contract claims.  Therefore, as a matter of law, there can be no consumer confusion as to the source of the Zimmerli products sold by Kabbaz-Kelly. *See Matrix Essentials, Inc.*, 988 F.2d at 590-593; *Ballet Makers, Inc.*, 633 F. Supp. at 1334-35; *L.G.B. Inc.*, 769 F. Supp. at 1250.   The goods come directly from ZTAG, and Kabbaz-Kelly has sold same "for a number of years."  As such, plaintiff's federal and New York common law trademark infringement and unfair competitions claims, as they relate to Defendants' sale of goods, do not lie and must be dismissed.

Alternatively, ZTAG's Second Claim for Relief (for federal unfair competition and false designation of origin) should be dismissed, as it merely recites conclusory legal elements without providing any factual allegations to support its claim. *See* Complaint at ¶¶ 44-49; *see also Iqbal*, 556 U.S. at 678.  ZTAG's Second Claim makes general references to "Defendants' conduct" and "Defendants' unauthorized and tortious conduct" as *per se* unfair competition, without identifying any facts that could reasonably support such a claim.  Furthermore, notwithstanding plaintiff's inability to plead facts to overcome Kabbaz-Kelly's sale of genuine goods, the existing contractual distributorship relationship between the parties created a license for Kabbaz to sell and advertise the Zimmerli-brand apparel, including the use of Zimmerli's Marks for the same

14

purposes. *See* Complaint at ¶ 20, 74.  These are alternate reasons to reject ZTAG's attempt to admonish its own distributor, Kabbaz-Kelly, for the sale of genuine goods.

Next, should the Court not dismiss the First and Third Claims for Relief in their entirety, it should dismiss those claims and/or strike those allegations as they relate to the unregistered ZIMMERLI OF SWITZERLAND Applied-for Mark for lack of a federal registration. *See* 15 U.S.C. § 1114(1)(a) (limiting civil actions to only "registrant[s]" of "a registered mark").

Finally, as ZTAG fails to allege that Kabbaz-Kelly's purported statements on the websites located at the Accused Domain Names were false, misleading, or confusing, so as to lead to an inference of confusion, its claims for trademark infringement and dilution relating thereto must be dismissed.   ZTAG accuses Kabbaz-Kelly of making what it characterizes as a "disparag[ing]" statement about the "Zimmerli brand and marks" on the Accused Domain Names, to wit:

> Since its inception, the Swiss firm's wares were a staple of the best specialty shops. Recently acquired by a venture capital group, Zimmerli is now aiming at a broader department store audience.

Complaint at ¶ 23.  Contrary to ZTAG's proposition, the "statements" are but excerpts of a much longer "about" section of the website. *See* Mercer Aff. at ¶ 9.  Taken in their entirety, no reasonable person would believe that the statements were a "mission or policy" of ZTAG, but merely descriptions of the brand offered on the website. *See id.* Moreover, the descriptions are nearly identical to statements ZTAG itself made regarding its business in its own Press Release. *See* Mercer Aff. at ¶¶ 10-13.

In the Press Release, ZTAG states "Von Nordeck International Holding AG took a majority shareholding [of ZTAG] in 2007." *Id.*  The Press Release describes Von Nordeck International Holding AG as a "firm which invests in profitable, medium-sized niche purveyors

with a focus on long-term commitments," i.e. a venture capital firm. *See id.* at ¶ 11.  ZTAG further adds that it "is engaged in a [brand] repositioning," to "get fit for the future by pursuing a growth strategy." *Id.* at ¶ 12. The Press Release continues, ZTAG's "business strategy focuses on Europe, the USA, Russia and China – markets in which Zimmerli already works in partnership with the best <u>department stores</u>, lingerie stores and fashion shops." *Id.* at ¶ 13. (emphasis added). Simply put, whether the statements are true or false, ZTAG itself made the same statements regarding its business, thereby defeating any claim it could have as to consumer confusion when repeated by Kabbaz-Kelly and warranting outright dismissal of its alleged claims.

Based on the foregoing, ZTAG's First, Second, Third and Fifth Claims for Relief must be dismissed.

2.     <u>The Fourth Claim for Relief for cybersquatting must be dismissed</u>

Again, here, ZTAG's allegations are deficiently pled and fail to support a claim for cybersquatting.  "To successfully assert a claim under the [Anti-Cybersquatting Consumer Protection ("ACPA")], a plaintiff must demonstrate that (1) its marks were distinctive at the time the domain name was registered; (2) the infringing domain names complained of are identical to or confusingly similar to plaintiff's mark; and (3) the infringer has a bad faith intent to profit from that mark." *Webadviso v. Bank of Am. Corp.,* 448 Fed.Appx. 95, 97 (2d Cir.2011) (citing 15 U.S.C. § 1125(d)(1)(a)); *see Gioconda Law Grp. PLLC v. Kenzie*, 941 F. Supp. 2d 424, 430 (S.D.N.Y. 2013).  Thus, a key and required element of any ACPA claim is "bad faith intent to profit from that mark."  *Gioconda Law Grp. PLLC*, 941 F. Supp. 2d at 430.  The ACPA lists nine, non-exclusive factors that courts may consider in determining bad faith. 15 U.S.C. § 1125(d)(1)(B)(I)-(IX).  In the absence of an allegation of bad faith, a plaintiff fails to state a cause of action under the ACPA.  *Gioconda Law Grp. PLLC*, 941 F. Supp. 2d at 430-36.

Here, the Complaint lacks any factual allegations of bad faith intent to profit off ZTAG's Marks.  As it does with other claims, ZTAG merely repeats an element of an ACPA claim, "Defendants registered and are using the [Accused Domain Names] . . . with a bad faith intent to profit from Zimmerli's marks." Complaint at ¶ 58.   Likewise, ZTAG's statement that, *upon information and belief*, Defendants hope to "transfer the offending websites to Zimmerli at a huge profit to Defendants" is insufficient.  Plaintiff has not alleged any intent to divert customers, nor for commercial gain, nor (as stated above) by creating a likelihood of confusion. Plaintiff's claims are threadbare. There are no other, plausible factual allegations of bad faith intent to profit.  This pleading failure necessitates dismissal.

Moreover, the nine factors relevant to the bad faith inquiry not only weigh in favor of Defendants, but also establish the absence of bad faith. The Court need not accept as true ZTAG's allegation that "Defendants did not believe and could not reasonably have believed their use of the [Accused Domain Names] constituted fair use or was otherwise lawful," as this allegation is contradicted by ZTAG's own statements that Defendants sold and distributed Zimmerli-brand apparel for years, that ZTAG sold Defendants Zimmerli-brand apparel and that Defendants owned the Accused Domain Name (thorough which ZTAG alleges Defendants sold apparel) for over 10 years prior to the initiation of this suit. *See* Complaint at ¶¶ 19-22, 74; Mercer Aff. at ¶ 7; *see also* 15 U.S.C. §§ 1125(d)(1)(B)(ii)(I)-(IV).

What is apparent is that ZTAG makes no allegation that Defendants ever offered to transfer the Accused Domain Names to ZTAG or any third party for financial gain or otherwise. *See* 15 U.S.C. § 1125(d)(1)(B)(ii)(VI).  Likewise, ZTAG fails to allege that Defendants attempted to profit off the Accused Domain Names without first using them in a "bona fide offering of any goods or services." *Id.*  In fact, ZTAG own statements point the opposite

direction, as the Complaint alleges that Defendants used "the [Accused Domain Names] to sell to consumers products. . ." *See* Complaint ¶ 22; *see also* 15 U.S.C. § 1125(d)(1)(B)(ii)(VI). Further, ZTAG makes no allegation that Defendants used material or misleading false contact information when applying for the registration of any of the Accused Domain Names. *See* 15 U.S.C. § 1125(d)(1)(B)(ii)(VII).  Notwithstanding ZTAG's allegations, Kabbaz-Kelly must have understood that its use of the Accused Domain Names consisted of fair use, or was authorized by, was licensed by, if not outright supported by ZTAG, as a legitimate distributor of genuine Zimmerli-brand apparel purchased from plaintiff ZTAG "for a number of years," and on the Internet since as early as 2003. *See* Mercer Aff. at ¶ 7; *see* 15 U.S.C. § 1125(d)(1)(B)(ii)(V). Thus, as the majority of factors weigh in favor of Defendants, ZTAG has not pled facts that even support an inference of bad faith intent.

As ZTAG has not pled facts sufficient to support the legal conclusion that Kabbaz-Kelly acted with a bad faith intent to profit from ZTAG's mark, as that term is used in § 1125(d), the Complaint fails to state a claim for cybersquatting against Kabbaz-Kelly.

## II.  PLAINTIFF'S SEVENTH, EIGHTH, NINTH, TENTH AND ELEVENTH CLAIMS FOR RELIEF SHOULD ALL BE DISMISSED AS DUPLICATIVE OF PLAINTIFF'S SIXTH CLAIM FOR BREACH OF CONTRACT

The allegations of the Complaint demonstrate that the plaintiff's Seventh (Breach of Implied Contract), Eighth (Unjust Enrichment), Ninth (Account Stated), Tenth (Breach of the Implied Covenant of Good Faith and Fair Dealings) and Eleventh (Fraudulent Inducement) Claims for Relief are all barely re-worked, duplicative versions of the plaintiff's Sixth Claim for Relief (Breach of Contract).  It is well settled under New York law that each of these claims should therefore be dismissed.

**A.**     **The Seventh Claim for Relief for Breach of Implied Contract Must be Dismissed**

A claim for breach of the implied covenant of good faith and fair dealing is properly dismissed as duplicative of a breach of contract claim when both "arise from the same facts." *MBIA Ins. Corp. v. Countrywide Home Loans, Inc.,* 87 A.D.3d 287, 297, 928 N.Y.S.2d 229 (1st Dep't 2011).  This is because it is well settled in New York that:

> [t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter."  "A 'quasi contract' only applies in the absence of an express agreement, and is not really a contract at all, but rather a legal obligation imposed in order to prevent a party's unjust enrichment

*Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 70 N.Y.2d 382, 388, 521 N.Y.S.2d 653, 656 (1987).

Here, plaintiff's claim for breach of implied contract seeks to recover the amount of $135,359.94 for defendants' supposed breach of their alleged obligations to pay past due invoices for goods delivered to them.  *See* Complaint at ¶¶ 77-79.  Plaintiff's breach of implied contract claim arises from the same facts as plaintiff's breach of contract claim, which alleges that "Defendants have breached the contract by failing to pay the sum of $135,359.94 for Zimmerli's goods delivered to Defendants."  Complaint at ¶ 74.  Plaintiff's implied breach of contract claim even goes so far as to expressly state that it is based on the defendants' alleged violation of the "agreements, contract and/or agreements with Zimmerli."  Complaint at ¶ 78.

Accordingly, the Seventh Claim for Relief for breach of implied contract should be dismissed as duplicative of plaintiff's breach of contract claim.

**B.     The Eighth Claim for Relief for Unjust Enrichment Must be Dismissed**

A claim for unjust enrichment is duplicative of a claim alleging breach of contract where "both causes of action seek damages for events arising from the same subject matter that is governed by an enforceable contract." *Bettan v. Geico General Ins. Co.*, 296 A.D.2d 469, 469-470, 745 N.Y.S.2d 545, 546 (2d Dep't 2002).

This is true when damages sought are merely for breach of contract, and "no wrong independent of the contract claim has been demonstrated." *Walter H. Poppe General Contracting, Inc. v. Town of Ramapo,* 280 A.D.2d 667, 668, 721 N.Y.S.2d 248, 249 (2d Dep't 2001) (quoting *Hassett–Belfer Senior Hous. v. Town of N. Hempstead,* 270 A.D.2d 307, 705 N.Y.S.2d 61 (2d Dep't 2001)).

Here the plaintiff's unjust enrichment claim stems from the defendants' alleged receipt of goods from Zimmerli, which they supposedly did not pay for. *See* Complaint at ¶ 82. Plaintiff seeks the sum of $135,359.94. *See id.* at ¶ 83. As noted above, plaintiff's breach of contract claim arises from these very same events and seeks the same exact damages. *See* Complaint at ¶ 74.

As a result, the Eighth Claim for Relief for unjust enrichment must be dismissed as duplicative of plaintiff's breach of contract claim.

**C.     The Ninth Claim for Relief for Account Stated Must be Dismissed**

A cause of action alleging an account stated cannot be utilized simply as another means to attempt to collect under a disputed contract. *See Grinnell v. Ultimate Realty, LLC,* 38 A.D.3d 600, 600, 832 N.Y.S.2d 244, 245 (2d Dep't 2007) (citing *Erdman Anthony & Assoc. v. Barkstrom*, 298 A.D.2d 981, 747 N.Y.S.2d 670 (4th Dep't 2002); *M. Paladino, Inc. v. Lucchese & Son Contr. Corp.*, 247 A.D.2d 515, 516, 669 N.Y.S.2d 318 (2d Dep't 1998); *Martin H.*

*Bauman Assoc. v. H & M Intl. Transp.*, 171 A.D.2d 479, 485, 567 N.Y.S.2d 404 (1st Dep't 1991)).

Here, plaintiff's account stated is once again a repeat of its attempt to collect under its Sixth Claim for Relief for breach of contract.  Plaintiff seeks the same sum of $135,359.94 for the supposed failure to pay for goods allegedly delivered to defendants.  *See* Complaint at ¶¶ 85-89.  Plaintiff even alleges that the supposedly unpaid for goods were sent and received to defendants "pursuant to the contract."  Complaint at ¶ 85.

As a result, plaintiff's Ninth Claim for relief for account stated should be dismissed as duplicative of plaintiff's breach of contract claim.

**D.    The Tenth Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Must be Dismissed**

Under New York law, a claim for breach of the implied covenant of good faith and fair dealing should be dismissed as duplicative of a plaintiff's separately asserted breach of contract claim.  *See Deer Park Enterprises, LLC v. Ail Systems, Inc.*, 57 A.D.3d 711, 712, 870 N.Y.S.2d 89, 90 (2d Dep't 2008) ("Here, the conduct and resulting injury alleged in the fourth cause of action are identical to those alleged in the first two causes of action alleging breach of contract. Therefore, the fourth cause of action should have been dismissed as duplicative of the breach of contract causes of action"); *DHB Industries, Inc. v. West-Post Management Co.*, 2005 WL 3076345, at *5 (Sup. Ct. Nassau Co.  Nov. 17, 2005) (dismissing cause of action for implied covenant of good faith and fair dealing pursuant to CPLR 3211(a)(7) as duplicative of breach of contract claim) (*citing Jacobs Private Equity, LLC v. 450 Park LLC*, 22 A.D.3d 347, 803 N.Y.S.2d 14 (1st Dep't 2005); *Cerberus International, Ltd. v. Banctec, Inc.*, 16 AD3d 126, 791 N.Y.S.2d 28 (1st Dep't 2005)).  Although all contracts contain an implied covenant of good faith

and fair dealing, this covenant "does not create any obligations beyond those stated in the contract." *DHB,* 2005 WL 3076345 at * 5.

Here, plaintiff's Tenth Claim for Relief seeks to hold defendants liable for a breach of the implied covenants of good faith and fair dealing that exist in the contract alleged to exist between the parties. *See* Complaint at ¶ 91. The conduct complained of by plaintiff in connection with the supposed breach of implied covenant of good faith and fair dealing is the same conduct set forth in the Sixth Claim for relief, which alleges breach of that contract. For instance, the Tenth Claim for Relief alleges that the breach of good faith and fair dealing occurred as a result of defendants'' alleged delay in making payment of plaintiff's supposedly past due invoices. Complaint at ¶ 92. This is the exact same conduct plaintiff complains of in its breach of contract claim. Both causes of action also seek the same $135,359.94 in damages.

Therefore, it is without question that the Tenth Claim for Relief is duplicative of plaintiff's breach of contract claim, and it must be dismissed.

### E.      The Eleventh Claim for Fraudulent Inducement Must be Dismissed

Under New York law, a plaintiff may not pursue a fraud cause of action simultaneously with a breach of contract cause of action, when the fraud is premised upon the same facts and circumstances as the breach cause of action. *Clark-Fitzpatrick, Inc. v. Long Island R. Co.,* 70 N.Y.2d 382, at 389, 521 N.Y.S.2d 653, at 656 (1987) (a breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated).

Merely alleging scienter in a cause of action to recover for breach of contract does not convert a breach cause of action into one sounding in fraud. *See Lo v. Curis,* 29 A.D.3d 525, 815 N.Y.S.2d 131 (2nd Dep't 2006). In that same vein, even an allegation that a defendant maintained an unexpressed intention not to perform a contract is *per se* insufficient to state a

prima facie cause of action for fraud. *See e.g., Meehan v. Meehan*, 227 A.D.2d 268, 642 N.Y.S.2d 664 (1st Dep't 1996).

Here, plaintiff's entire fraud claim is premised on the defendants' supposedly fraudulent misrepresentation of "their intent and/or ability to pay past due invoices."  Complaint at ¶ 95. Plaintiff seeks as damages the $135,359.94 allegedly due under the supposedly past due invoices. *See  id.* at ¶ 96.  As noted above, plaintiff's breach of contract alleges that defendants have breached the contract by failing to pay those very same invoices and also seeks the amount of $135,359.94.  *See id*. at ¶¶ 72-74.

Accordingly, plaintiff's fraudulent inducement claim is duplicative of its breach of contract claim and must be dismissed.  *See Alamo Contract Builders, Inc. v. CTF Hotel Co.*, 242 A.D.2d 643, 644, 663 N.Y.S.2d 42, 43 (2d Dep't 1997) (dismissing fraud claim based on contract as "[i]t is well settled that a cause of action to recover damages for fraud may not be maintained when the only fraud charged relates to a breach of contract"); *Gordon v. Dino De Laurentiis Corp.*, 141 A.D.2d 435, 436, 529 N.Y.S.2d 777, 779 (1st Dep't 1988) (dismissing fraud claim that restated defective breach of contract claim as "[a] fraud claim is not sufficiently stated where it alleges that a defendant did not intend to perform a contract with a plaintiff when he made it").

In addition to being repetitive of its breach of contract claim, plaintiff's allegation of fraudulent inducement is merely conclusory, and does not satisfy the requirements in Fed. R. Civ. P. 9(b) or CPLR 3016(b) that the pleading specify the details constituting the wrong.  *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); NY CPLR 3016(b) ("[w]here a cause of action or

defense is based upon misrepresentation, fraud, mistake, willful default, breach of trust or undue influence, the circumstances constituting the wrong shall be stated in detail").

## <u>CONCLUSION</u>

For all of the aforementioned reasons, defendants' patrial motion to dismiss should be granted and the First, Second, Third, Fourth, Fifth, Seventh, Eighth, Ninth, Tenth and Eleventh Claims for Relief in the Complaint should be dismissed.

Dated: Brooklyn, New York
April 25, 2014

_____/s_____
David D. Lin, Esq. (DL-3666)
Lewis & Lin LLC
Co-Counsel for Defendants
45 Main Street
Suite 608
Brooklyn, New York 11201
david@ilawco.com
718-243-9323

_____/s_____
Patrick B. Fife, Esq. (PF-2927)
Twomey, Latham, Shea, Kelley,
Dubin & Quartararo LLP
Co-Counsel for Defendants
33 West Second Street
P.O. Box 9398
Riverhead, New York 11901
pfife@suffolklaw.com
631-727-2180