```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
ZIMMERLI TEXTIL AG,

                        Plaintiff,
                                              MEMORANDUM & ORDER
          -against-                           14-CV-1560(JS)(AYS)

ALEXANDER KABBAZ, JOELLE KELLY,
KABBAZ-KELLY & SONS, and LUXURY
CLOTHING, LTD.

                        Defendants.
----------------------------------------X
APPEARANCES
For Plaintiff:       Hayes Young, Esq.
                     The Law Offices of Hayes Young
                     The Woolworth Building
                     233 Broadway, Suite 2305
                     New York, NY 10279

For Defendants:      Patrick Brian Fife, Esq.
                     Twomey Latham Shea Kelley Dubin
                       & Quartararo LLP
                     33 West 2nd Street
                     P.O. Box 9398
                     Riverhead, NY 11901

                     David Dong Ann Lin, Esq.
                     Lewis & Lin, LLC
                     45 Main Street, Suite 608
                     Brooklyn, NY 11201
```

SEYBERT, District Judge:

Plaintiff Zimmerli Textil AG ("Plaintiff" or "Zimmerli") brings this action against defendants Alexander Kabbaz, Joelle Kelly, Kabbaz-Kelly & Sons, and Luxury Clothing, Ltd. (collectively, "Defendants"), asserting claims of trademark infringement, false designation of origin, unfair competition, trademark dilution by tarnishment, and cybersquatting in

violation of the Lanham Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. 1051, et seq., as well as New York state common law claims of trademark infringement and unfair competition, breach of contract, breach of implied contract, unjust enrichment, account stated, breach of the implied covenant of good faith and fair dealing, fraudulent inducement, and use of dishonored checks.

With respect to its Lanham Act and state law trademark infringement claims, Zimmerli asserts rights in the U.S. registered trademark "ZIMMERLI" and other unregistered marks, and contends that Defendants' alleged use the websites <zimmerliofswitzerland.com>, <zimmerliofswitzerland.net>, <zimmerli.co.uk>, and <zimmerli.asia> to resell Zimmerli's products and its competitors' similar products infringes on its trademark rights. Zimmerli's tort- and contract-based state law claims arise out of Defendants' alleged failure to pay Zimmerli for product they ordered from Zimmerli for resale through their websites.

Defendants move to dismiss all claims, except for the breach of contract and use of dishonest checks claims, for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docket Entry 8.) For the following reasons, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.

BACKGROUND[1]

Zimmerli is Swiss corporation with its principal place of business in Aarburg, Switzerland. (Compl. ¶ 1.) Zimmerli is "a widely recognized manufacturer and worldwide seller of fine men's and women's underwear, lingerie, sleepwear and loungewear." (Compl. ¶ 2.) It began manufacturing and selling its products in Switzerland in 1871 and has sold its apparel in the United States since 1914. (Compl. ¶ 2.)

Zimmerli holds U.S. Trademark Registration No. 2,627,343 for the trademark "ZIMMERLI" (the "ZIMMERLI Trademark"), which was registered on October 1, 2002 for: "clothing, namely, underwear, nightwear, pullovers, socks, polo shirts, in Class 25." (Compl. Ex. A.) Additionally, Zimmerli has a pending United States trademark application for "ZIMMERLI OF SWITZERLAND." (Compl. ¶ 15 (citing United States Trademark Serial No. 76715850).) Finally, Zimmerli also owns a Swiss-registered "Zimmerli logo design." (Compl. ¶ 16, Ex. B.) Where necessary, the Court will refer to these marks collectively as the "Zimmerli Name and Design Marks." According to the Complaint, the Zimmerli Name and Design Marks "have been so widely publicized and [ ] used in connection with such significant advertising, publicity and sales, that

---

[1] The following facts are drawn from the Complaint and are presumed to be true for the purpose of this Memorandum and Order.

3

[they] . . . have independently achieved secondary meaning and substantial goodwill in the United States and worldwide marketplaces." (Compl. ¶ 17.)

Defendants Alexander Kabbaz ("Kabbaz") and Joelle Kelly ("Kelly") are a married couple residing in Amagansett, New York. They operate a retail apparel business using the unincorporated trade name Kabbaz-Kelly & Sons ("K-K & Sons"), which Zimmerli also names as a defendant in this case. (Compl. ¶¶ 3-4.) Defendant Luxury Clothing, Ltd. ("Luxury Clothing") is a New York corporation. (Compl. ¶ 5.) Zimmerli alleges that Kabbaz and Kelly formed Luxury Corporation in January 2014 in anticipation of this litigation, presumably to shield themselves from potential personal liability for their operation of K-K & Sons. (Compl. ¶ 5.)

Defendants sell and distribute the products of apparel companies "largely through internet sites," which they operate "out of Amagansett, New York." (Compl. ¶ 19.) They "have sold and distributed Zimmerli branded apparel on a non-exclusive bases for a number of years." (Compl. ¶ 20.) Zimmerli alleges that Defendants "own, operate and administer" the websites <zimmerliofswitzerland.com>, <zimmerliofswitzerland.net>, <zimmerli.co.uk>, and <zimmerli.asia> (the "Infringing Domains"), which they use not only to sell Zimmerli's products, but also to sell similar products manufactured by Zimmerli's

4

competitors. (Compl. ¶¶ 21-22.) Zimmerli contends that Defendants' use of the Infringing Domains infringes on its rights in the Zimmerli Name and Design Marks. (Compl. ¶ 22.) In this action, Zimmerli asserts claims of trademark infringement, false designation of origin, unfair competition, trademark dilution by tarnishment, and cybersquatting under the Lanham Act and trademark infringement and unfair competition under New York state common law arising out of Defendants' use of the Infringing Domains. (Compl. ¶¶ 34-70.)

Zimmerli also alleges that beginning in August 2013, Kabbaz, Kelly, and K-K & Sons stopped paying invoices for products they ordered from Zimmerli between June and October 2013, which resulted in past due amounts totaling $135,359.94. (Compl. ¶ 25.) Zimmerli contends that throughout this time, Defendants "intentionally deceive[d] and manipulate[d] Zimmerli into providing additional product," notwithstanding the past due invoices, by "ma[king] misrepresentations as to their true intentions and ability to pay the past due invoices." (Compl. ¶¶ 26-27.) In support of this contention, Zimmerli alleges that on November 1, 2013, Defendants sent Zimmerli four checks totaling $38,026.41 as partial payment of the outstanding balance owed to Zimmerli. (Compl. ¶ 28.) However, each check was "ultimately dishonored by Capital One Bank." (Compl. ¶ 29.) Zimmerli contends that Defendants drew the checks "without any

5

intent and/or ability to actually pay down the sums due to [Zimmerli] in a fraudulent effort to get Zimmerli to continue to ship goods despite the Defendants['] burgeoning account payable." (Compl. ¶ 29.) In November 2013, Zimmerli stopped selling its apparel to Defendants. (Compl. ¶ 30.) Based on these allegations, Zimmerli asserts claims of breach of contract, breach of implied contract, unjust enrichment, account stated, breach of the implied covenant of good faith and fair dealing, fraudulent inducement, and use of dishonest checks against Kabbaz, Kelly, and K-K & Sons only. (Compl. ¶¶ 71-102.)

Defendants now move to dismiss all claims, except for Zimmerli's breach of contract and dishonest check claims, for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docket Entry 8.) This motion is fully brief and currently pending before the Court.

## DISCUSSION

### I. Legal Standard

In deciding Rule 12(b)(6) motions to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); accord Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009). First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare

6

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; accord Harris, 572 F.3d at 72. Second, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss. Iqbal, 556 U.S. at 679. Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.; accord Harris, 572 F.3d at 72.

## II. Trademark Infringement, False Designation of Origin, and Unfair Competition

In its first, second, and fifth causes of action, Zimmerli asserts claims of: (1) trademark infringement under the Lanham Act, 15 U.S.C. § 1114(1)(a), (Compl. ¶¶ 34-42); (2) false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a), (Compl. ¶¶ 43-49); and (3) trademark infringement and unfair competition under New York state common law, (Compl. ¶¶ 65-70). It is well settled that substantially similar standards apply when analyzing such claims. Van Praagh v. Gratton, 993 F. Supp. 2d 293, 301 (E.D.N.Y. 2014) (citing Richemont N. Am., Inc. v. Huang, No. 12-CV-4443, 2013 WL 5345814, at *5 n.15 (S.D.N.Y. Sept. 24, 2013)). Accordingly, a singular discussion of these claims follows.

The Lanham Act seeks "to regulate commerce within the control of Congress by making actionable the deceptive and

7

misleading use of marks in such commerce." 15 U.S.C. § 1127. Specifically, the statute "protects the rights of the first user of a trademark, particularly where that mark is a strong one." Streetwise Maps, Inc. v. VanDam, Inc., 159 F.3d 739, 742 (2d Cir. 1998). "Trademark law accomplishes this by barring a later user from employing a confusingly similar mark, likely to deceive purchasers as to the origin of the later user's product, and one that would exploit the reputation of the first user." Id.

As to trademark infringement under the Lanham Act, 15 U.S.C. § 1114(1)(a) prohibits the commercial use of "any reproduction, counterfeit, copy, or colorable imitation of [another's] registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). As to false designation of origin under the Lanham Act, which is sometimes referred to as unfair competition, 15 U.S.C. § 1125(a) "prohibits any misrepresentation likely to cause confusion about the source of a product or service." L'Oreal USA, Inc. v. Trend Beauty Corp., No. 11-CV-4187, 2013 WL 4400532, at *14 (S.D.N.Y. Aug. 15, 2013). Specifically, 15 U.S.C § 1125(a) prohibits, in relevant part, the use of

8

> any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact . . . likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

15 U.S.C. § 1125(a)(1)(A).

To state a claim for trademark infringement or false designation of origin under the Lanham Act, a plaintiff must allege that "'(1) it has a valid mark that is entitled to protection under the Lanham Act; and that (2) the defendant used the mark, (3) in commerce, (4) in connection with the sale . . . or advertising of goods or services, (5) without the plaintiffs['] consent.'" Dual Groupe, LLC v. Gans-Mex LLC, 932 F. Supp. 2d 569, 573 (S.D.N.Y. 2013) (ellipsis in original) (quoting 1-800 Contacts, Inc. v. WhenU.Com, Inc., 414 F.3d 400, 407 (2d Cir. 2005)). Additionally, the plaintiff must allege that "the defendant's use of the mark is likely to cause confusion 'as to the affiliation, connection, or association of [defendant] with [plaintiff], or as to the origin, sponsorship, or approval of [the defendant's] goods, services or commercial activities by [plaintiff].'" Id. (alterations in original) (quoting 1-800 Contacts, 414 F.3d at 407).

9

Defendants argue that Zimmerli's trademark infringement, false designation of origin, and unfair competition claims should be dismissed because Defendants' activities fall under the "genuine goods" doctrine. (Defs.' Br., Docket Entry 9, at 13-14.) The Court disagrees. Under the genuine goods doctrine, "a defendant may lawfully use a plaintiff's trademark where doing so is necessary to describe the plaintiff's product and does not imply a false affiliation or endorsement by the plaintiff of the defendant." Tiffany (NJ) Inc. v. eBay Inc., 600 F.3d 93, 102-03 (2d Cir. 2010). As the Second Circuit has explained:

> While a trademark conveys an exclusive right to the use of a mark in commerce in the area reserved, that right generally does not prevent one who trades a branded product from accurately describing it by its brand name, so long as the trader does not create confusion by implying an affiliation with the owner of the product.

Id. (quoting Dow Jones & Co. v. Int'l Sec. Exch., Inc., 451 F.3d 295, 308 (2d Cir. 2006)). Here, however, Zimmerli alleges that Defendants are using domain names that are similar to Zimmerli's registered trademark to sell Zimmerli's products and its competitors' products. This could easily lead to consumer confusion by implying an affiliation with the owner of the product, and also could confuse consumers by implying an affiliation between Zimmerli and its competitors' products.

10

Zimmerli's allegations state a claim. Accordingly, Defendants' motion to dismiss Zimmerli's trademark infringement, false designation of origin, and unfair competition claims is DENIED.[2]

III. <u>Trademark Dilution</u>

Zimmerli also brings a claim of trademark dilution under the Lanham Act, 15 U.S.C. § 1125(c). (Compl. ¶¶ 50-55.) "'To prevail on a federal trademark dilution claim, a plaintiff must prove that (1) its mark is famous and distinctive, (2) its mark is used in commerce by the defendant, and (3) the defendant's use is likely to cause dilution through either 'blurring' or 'tarnishment.'" <u>Van Praagh</u>, 993 F. Supp. 2d at 304 (quoting <u>Boarding Sch. Review, LLC v. Delta Career Educ. Corp.</u>, No. 11-CV-8921, 2013 WL 6670584, at *6 (S.D.N.Y. Mar. 29, 2013)). Zimmerli asserts a claim of dilution through tarnishment. "'[D]ilution by tarnishment generally arises when the plaintiff's trademark is linked to products of shoddy quality, or is portrayed in an unwholesome or unsavory context likely to evoke unflattering thoughts about the owner's product.'" <u>Id.</u> (quoting <u>Tiffany (NJ) Inc.</u>, 600 F.3d at 111).

Here, Zimmerli has stated a claim for trademark dilution by tarnishment. The Complaint alleges that Defendants

---

[2] However, to the extent that Zimmerli's claims of trademark infringement relies on alleged infringement of unregistered marks, these claims are DISMISSED, as 15 U.S.C. § 1114 applies to registered marks.

11

are using the Zimmerli Name and Design Marks to sell its competitors' products. The Court finds that this could result in dilution of the Zimmerli Name and Word Marks, depending on what discovery reveals regarding the quality of Zimmerli's competitors' products as compared to its products. Accordingly, Defendants' motion to dismiss Zimmerli's trademark dilution claim is DENIED.

IV. Cybersquatting

Zimmerli also brings a claim of cybersquatting under the Lanham Act, 15 U.S.C. ¶ 1125(d)(1)(A). (Compl. ¶¶ 56-64.) "Cybersquatting involves the registration as domain names of well-known trademarks by non-trademark holders who then try to sell the names back to the trademark owners." Sporty's Farm L.L.C. v. Sportsman's Mkt., Inc., 202 F.3d 489, 493 (2d Cir. 2000). A cybersquatting claim under the Lanham Act "requires a showing that the marks in question (1) 'were distinctive at the time the domain name was registered; (2) the infringing domain names complained of are identical to or confusingly similar to plaintiff's mark; and (3) the infringer has a bad faith intent to profit from that mark.'" Flat Rate Movers Ltd. V. FlatRate Moving & Storage, Inc., No. 13-CV-0059, 2015 WL 1849834, at *6 (S.D.N.Y. Apr. 22, 2015) (quoting Elastic Wonder, Inc. v. Posey, No. 13-CV-5603, 2015 WL 273691, at *5 (S.D.N.Y. Jan. 22, 2015)).

Defendants argue that Zimmerli has failed to plausibly allege that they registered the Infringing Domains with a "bad faith intent to profit." (Defs. Br. at 16-18.) The Court agrees. "A 'bad faith intent to profit' is a term of art in the statute and cannot be equated with 'bad faith' in other contexts (such as trademark infringement)." Flat Rate Movers, 2015 WL 1849834, at *6 (quoting Sporty's, 202 F.3d at 499 n. 13). "A plaintiff must show that the defendant's use of the domain name is 'an attempt to profit specifically from 'squatting' on the domain name with bad faith,' rather than 'simply . . . another aspect of the alleged trademark infringement.'" Id. (ellipsis in original) (quoting Kaplan, Inc. v. Yun, 16 F. Supp. 3d 341, 351 (S.D.N.Y. 2014)).

Here, Zimmerli speculatively alleges that "Defendants hoped to leverage their illegal misuse of the Infringing Domains . . . with the ultimate goal of never having to pay the outstanding invoices in exchange for closing of the Infringing Domains or the transfer of the offending websites to Zimmerli at a huge profit." (Compl. ¶ 33.) However, the Complaint never alleges that Defendants ever offered to sell or exchange the Infringing Domain names, and it provides for details about when and under what circumstances Defendants registered the Infringing Domains. Without these extra details, Zimmerli's cybersquatting claim is not plausible. Accordingly, Defendants'

motion to dismiss insofar as it seeks dismissal of Zimmerli's cybersquatting claim is GRANTED.

V. State Law Claims

A. Quasi-Contract Claims

As an alternative to its breach of contract claim against Kabbaz, Kelly, and K-K & Sons based on their alleged failure to pay Zimmerli for past due invoices for Zimmerli product, Zimmerli also asserts quasi-contract claims of breach of implied contract and unjust enrichment. (Compl. ¶¶ 76-83.) Defendants seek dismissal of these claims on the ground that they are duplicative of Zimmerli's breach of contract claim. (Defs.' Br. at 19-20.) The Court disagrees.

Under New York law, claims of quantum meruit and unjust enrichment are quasi-contract claims that are analyzed together. Goll v. First Tenn. Capital Markets, No. 05-CV-7890, 2006 WL 2135801, at *3 (S.D.N.Y. Aug. 1, 2006) ("Under New York law, these two claims [unjust enrichment and quantum meruit] are analyzed together as a quasi-contract claim."). Because they are quasi-contractual, "these claims generally exist only where there is no express agreement between the parties." D'Amato v. Five Star Reporting, Inc., 80 F. Supp. 3d 395, 421 (E.D.N.Y. 2015). Nonetheless, a quasi-contract claim "may be pleaded in the alternative to breach of contract," Chigirinskiy v. Panchenkova, No. 14-CV-4410, 2015 WL 1454646, at *18 (S.D.N.Y.

14

Mar. 31, 2015), and "[a]t the pleading stage, [p]laintiff is not required to guess whether it will be successful on its contract, tort, or quasi-contract claims." St. John's Univ., N.Y. v. Bolton, 757 F. Supp. 2d 144, 183 (E.D.N.Y. 2010). Accordingly, Defendants' motion to dismiss Zimmerli's quasi-contract claims is DENIED.

B. Account Stated

Zimmerli also asserts a claim for account stated. (Compl. ¶¶ 84-89.) Defendants also seek dismissal of this claim on the ground that it is duplicative of Zimmerli's breach of contract claim. (Defs.' Br. at 20-21.) The Court agrees.

"'[A] claim for an account stated may not be utilized simply as another means to attempt to collect under a disputed contract.'" Media Tenor Int'l AG v. Medco Health Sols., Inc., No. 13-CV-7223, 2014 WL 2933215, at *8 (S.D.N.Y. June 27, 2014) (quoting Martin H. Bauman Assocs., Inc. v. H & M Int'l Transport, Inc., 171 A.D.2d 479, 485, 567 N.Y.S.2d 404, 409 (1st Dep't 1995)). "'If plaintiff can prove an enforceable contract, then it will be able to recover under [that] cause of action,' and the account stated claim can be dismissed." Id. (alteration in original) (quoting Bauman Assocs., 171 A.D.2d at 485, 567 N.Y.S.2d at 409). "An account stated claim should not be dismissed as duplicative of a breach of contract claim, however, if the account stated claim gives rise to different damages."

15

Id. (citing NetJets Aviation, Inc. v. LHC Commc'ns, LLC, 537 F.3d 168, 175 (2d Cir. 2008)).

Here, Zimmerli's account stated claim simply seeks to recover the damages related to its breach of contract claim against Kabbaz, Kelly, and K-K & Sons. Accordingly, Defendants' motion to dismiss Zimmerli's account stated claim is GRANTED.

C. Implied Covenant of Good Faith and Fair Dealing and Fraudulent Inducement

Finally, Defendants also argue that Zimmerli's fraudulent inducement claim and claim for breach of the implied covenant of good faith and fair dealing should be dismissed because they are duplicative of Zimmerli's breach of contract claim. (Defs.' Br. at 21-24.) However, again, "[a]t the pleadings stage . . . the Plaintiff[ is] entitled to pursue alternative theories." Apple v. Atlantic Yards Dev. Co., LLC, No. 11-CV-5550, 2012 WL 2309028, at *6 (E.D.N.Y. June 18, 2012) (collecting cases). And here, Zimmerli has alleged that Kabbaz and Kelly engaged in affirmative deception by sending Zimmerli dishonored checks in attempt to secure more shipments of Zimmerli product notwithstanding their failure to pay outstanding invoices. Based on these allegations, the Court will not dismiss Zimmerli's breach of the implied covenant of good faith and fair dealing and fraudulent inducement claims at the pleading stage. See Citi Mgmt. Grp., Ltd. v. Highbridge

House Ogden, LLC, 45 A.D.3d 487, 847 N.Y.S.2d 33, 34 (1st Dep't 2007) ("Based upon the varying allegations suggesting affirmative deception, the claims for breach of the implied covenant of good faith and fair dealing, and for fraud, should not be dismissed as duplicative of the breach-of-contract cause of action at this juncture."). Accordingly, Defendants' motion to dismiss Zimmerli's claims of breach of the implied covenant of good faith and fair dealing and fraudulent inducement is DENIED.

VI. Leave to Amend

Although Zimmerli has not requested leave to replead, the Second Circuit has stated that "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." Hayden v. Cnty. of Nassau, 180 F.3d 42, 53 (2d Cir. 1999); see also FED. R. CIV. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). Leave to amend should be granted unless there is evidence of undue delay, bad faith, undue prejudice, or futility. See Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001). For the reasons articulated above, it would be futile to grant Zimmerli leave to replead his claim for an account stated, and this claim is hereby DISMISSED WITH PREJUDICE. However, the Court GRANTS Zimmerli leave to replead its fourth cause of action of cybersquatting under the Lanham Act.

CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Docket Entry 8) is GRANTED IN PART and DENIED IN PART. The motion is GRANTED with respect to Zimmerli's claims of cybersquatting under the Lanham Act and for an account stated. Zimmerli's claim for an account stated is DISMISSED WITH PREJUDICE, and its claim of cybersquatting is DISMISSED WITHOUT PREJUDICE and with leave to replead. Defendants' motion is DENIED in all other respects. If Zimmerli wishes to replead its cybersquatting claim, it must do so with thirty (30) days of this Memorandum and Order. If it fails to do so, this claim will be dismissed with prejudice.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: September __30__, 2015
Central Islip, New York