FILED
CLERK
3/3/2016
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------X

ZIMMERLI TEXTIL AG, : 14-CV-01560 (JS)

Plaintiff, : 100 Federal Plaza
: Central Islip, New York

v. : February 18, 2016

KABBAZ, *et al.*,
Defendants.
------------------------------------X

TRANSCRIPT OF CIVIL CAUSE FOR PRETRIAL CONFERENCE
BEFORE THE HONORABLE ANNE Y. SHIELDS
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff: HAYES YOUNG, ESQ.
The Law Offices of Hayes Young
The Woolworth Building
233 Broadway
Suite #2305
New York, New York 10279

For the Defendants: DAVID DONG ANN LIN, ESQ.
Lewis & Lin, LLC
45 Main Street
Suite #608
Brooklyn, New York 11201

PATRICK BRIAN FIFE, ESQ.
Twomey Latham Shea Kelley
Dubin & Quartararo, LLP
33 West 2nd Street
PO Box 9398
Riverhead, New York 11901

(Appearances continue on next page.)

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

APPEARANCES: (Continued)

Court Transcriber: RUTH ANN HAGER, C.E.T.**D-641
Typewrite Word Processing Service
211 N. Milton Road
Saratoga Springs, New York 12866

(Proceedings began at 10:39 a.m.)

THE CLERK: Calling 15-CV-01560, Zimmerli Textil AG v. Kabbaz, *et al.* Please state your appearances for the record.

MR. YOUNG: Good morning, Your Honor. Hayes Young of The Law Offices of Hayes Young, 233 Broadway, New York, New York, appearing for the plaintiff Zimmerli Textil.

THE COURT: Good morning.

MR. YOUNG: Good morning, Your Honor.

MR. LIN: Good morning. David Lin from Lewis & Lin appearing for the defendants. I'm joined here by my colleague Brian Fife from Twomey Latham.

THE COURT: Good morning.

MR. LIN: Good morning.

THE COURT: You can be seated and you can stay seated. This is all recorded. Just speak into the mic [indiscernible], all right?

MR. YOUNG: Thank you, Your Honor.

THE COURT: Okay. We're here for a conference and I just want to make note that I did see the letter that was on the docket. I think it was filed yesterday. Was that by the defendants?

MR. LIN: Yes, Your Honor.

THE COURT: Right. And I know that you mentioned perhaps putting that off given the fact that there is going to

be a conference with Judge Seybert. I think it's in May on a motion to dismiss some counterclaims. So had it been made much earlier I would have denied it anyway, so no harm anyway there.

The case has been pending for -- it's going on almost a year anniversary, right? And I see this case as a business dispute. There are trademark issues. There's contract issues basically. I looked in the papers on this case and there was a lot of back and forth, but at the end of the day it is plaintiff saying that the defendant owes the money on the contract and there are issues as to the use of the name and use of domain name is not what it's about. I know that there are counterclaims for defamation and a lot of [indiscernible] competition and everybody has got 15 causes of action. You can go back and forth for years with motion practice or you can do the right thing for your clients and move on with the case, so that's what we're going to do. We're going to move on.

Has there been any discovery and I'm guessing the answer to that is no?

MR. YOUNG: That's correct, Your Honor.

THE COURT: Okay. So we're not going to stay discovery. We're going to move forward on the claims that are before the Court on the effect of counterclaims. We've got a lot of issues, a lot of areas to start discovery that will

have nothing to do with whether or not these defamation claims are ultimately dismissed by the District Court. And I think you know both agree with that.

So I don't think that you have taken any time to look at my discovery worksheet in this case or have you?

MR. YOUNG: We took the time to look at it, Judge, but we -- and we've caucused on other issues, but not really focusing on the discovery not knowing exactly how we're going to proceed, vis-a-vis the motion to dismiss.

THE COURT: Okay. So now that we did it [ph.] going forward, what I want you to do is I'll give you guys five minutes to talk to each other, take a look at the worksheet, come up with some days, give it to me and then I'll talk about where we're going, okay?

MR. YOUNG: Okay.

THE COURT: All right. [Indiscernible]

MR. LIN: Thank you.

(Off the record.)

THE COURT: Okay. Thanks. So I see that you submitted some dates and I want to -- I think I will be generous if what the case is about and given how the case is, we'll go and make some changes to those dates and [indiscernible].

First of all, Rule 26 disclosures are generally something that people can do very simply. It's really just

stating names. I mean, take a look at [indiscernible]. I'm sure [indiscernible] disclosures. More often than not, we'll be able to submit these. They have them due the next day. I've given you until March 1st for Rule 26 disclosures. I don't think that's a big deal.

I want to talk about phase one of discovery, what types of things. And what I'd like to do is kind of get on the record what's going to be exchanged voluntarily without having to go through the formality of formal document requests, right?

So obviously I think in this case what we're going to exchange are the contrasting issues, right? Anything evidencing amounts owed, because I think there's a claim that here are -- there's a breach of contract claim that the defendants owe the plaintiffs something in excess of about $138,000. Is that what's at issue?

MR. YOUNG: Yes, Your Honor.

THE COURT: Sometimes that -- okay. So we want to look at exchange any contract exchange any evidence that shows that demand was made, payment was not made. I think there's also an issue as to payment that was made but the checks were dishonored, so documents related to those payments.

Let me ask the parties to [indiscernible] let me ask the plaintiff, what would you ask for if you were writing in a document request?

MR. YOUNG: Judge, I think also any evidence of obviously timely rejection of any of the goods that are in question.
THE COURT: Okay.
MR. YOUNG: The invoices that are in question, timely rejection, any emails surround any issues with the -- any issues with the goods that were delivered. Emails --
THE COURT: You're talking about in terms of quality of goods --
MR. YOUNG: Yes.
THE COURT: -- [indiscernible] return?
MR. YOUNG: Yeah.
THE COURT: Let me ask you this. Have the parties communicated by emails?
MR. YOUNG: Yes.
THE COURT: Okay. So when we're talking about ESI and that kind of production; is it extensive, is it if you plan on serving hard copies on each other, what do you think the ESI [indiscernible] are?
MR. YOUNG: I'm not sure how extensive they are, Your Honor.
THE COURT: Okay. What's the time frame? I know you probably have done business for longer, right? When did these two companies start doing business before everything went awry?

MR. YOUNG: I want to say around the early 2000s.
THE COURT: Okay. So you had a long period of time where everything was sort of going along well and then everything falls apart now in the lawsuit, right?
MR. YOUNG: Yes.
THE COURT: So the invoices for which the plaintiff did not get paid were those around 2013?
MR. YOUNG: Yeah. That would be after 2000 and -- I'd say about -- I think they probably started around '11 or '12.
THE COURT: Okay.
MR. YOUNG: And then run through '13.
THE COURT: So if we were to go back how many years would ESI -- what would you think would be reasonable?
MR. YOUNG: I think four years. Five years. From '13 -- between '08 and '13, say.
THE COURT: Take a look at that. If that turns out to be onerous, too much proportionality with respect to what's at stake here let me know, but talk to each other first about that. Talk about how you want to do your production, whether it's hard copy, electronic, and work that out amongst yourselves, okay?
MR. YOUNG: Okay.
THE COURT: All right. So those are going to be emails with respect to the contract at issue. Any problems

with the products, return some of the products.

I know that the defendants have raised counterclaims with respect to simply [indiscernible], is that right?

MR. LIN: Yes.

THE COURT: [Indiscernible] margin?

MR. LIN: Yes.

THE COURT: Okay. So if you've got documents on that, you'll have to give that to the other side. In that email if you complained about that before this lawsuit you'll give that to the other side.

MR. LIN: Yeah.

THE COURT: Because [indiscernible] the plaintiff are there other documents that you can identify right now?

MR. YOUNG: Those would be the key ones around the contractual issues.

THE COURT: Okay. Okay. What about the issue with the use of the name and the domain names of the website? Were those domain names used with the plaintiff's consent over the years? What's the story about those?

MR. YOUNG: I would say that there was -- at some point there was some -- without prejudicing the position there, there might be something that would be interpreted to be of tacit concern.

THE COURT: Okay. So if you have any documents that this is both sides concerning the use by the defendant of the

domain names, produce those to each other; if there's any documents referring to correspondence about the use of the domain names, any documents showing the consent to these.

All right. Let me ask on the defendant's side, what would you ask the plaintiff for?

MR. LIN: You know, we have our defamation-related claims, so our allegation is that they made these claims -- they made these statements saying that we sowed counterfeit goods and we sold goods without authorization, so we would like information they have supporting those statements.

THE COURT: And the particular statements you're referring to?

MR. LIN: There are three statements that we outlined in our complaint.

THE COURT: Okay. And they're in the counterclaim?

MR. LIN: Right.

THE COURT: Right?

MR. LIN: In our counterclaims, yeah.

THE COURT: Okay. So what we want is any documents by the -- that the plaintiffs have showing the truth or falsity of those statements. Is that what you're saying?

MR. LIN: Right, right.

THE COURT: Okay.

MR. YOUNG: Judge, if I could be heard on that briefly --

THE COURT: Sure.

MR. YOUNG: -- I think that -- first of all, it's framed is that -- it's framed as all liable complaints, so I take it that there's a write-up. I -- and now, and one of the -- I mean, I -- I guess I could be tipping my hand too much, but we anticipated making a motion to dismiss on this. And part of the motion to dismiss is New York requires specificity with reference to -- as Your Honor I'm sure well knows -- requires specificity with reference to the particular statements that are defamatory.

These are dropped down and bolded, but they're not quoted and I think I know the document that they're referring to and they're not exact quotations. I think that -- and the basis for our motion were going to be the statements that were made by my client and I think I know what they are. But if they're liable we can solve this pretty quickly and it will set up the motion to dismiss.

If they're liable, give us the liablous writing. Let me take a look at it and then we'll know exactly what was said. And I don't think that the statements -- if it's the same document I am looking at, I don't think the statements are liablous. I don't think they're defamatory as a threshold issue and I think that was going to be our basis --

THE COURT: All right.

MR. YOUNG: -- for the summary judgment, so I think

a lot of discovery on that issue --

THE COURT: [Indiscernible] --

MR. YOUNG: -- is probably --

THE COURT: That's not [indiscernible].

MR. YOUNG: Yeah.

THE COURT: Let's keep this simple. Let's have the defendant produce to the plaintiff what the statement is. I've looked at your counterclaim and I do see that you say in paragraph 161, "On or about July 1, 2015, plaintiff published all defamatory" and it goes on. Produce that statement. Produce information as to that statement. And frankly, I think part of that production of information as to that statement would likely be part of Rule 26 disclosure, in any event.

So I'm not going to order too much production right now for initial purposes on the defamation claims. I will order that the defendant produce the statement forming the basis of the claims to plaintiff and then maybe you can decide whether or not you even want to make a motion to dismiss on that. You know, take a look at it. See what it means in the grand scheme of what this case is really about. But for purposes of initial disclosures, I'm just going to ask the defendant to produce to the plaintiff exactly what statements you allege to support of defamation claims.

MR. YOUNG: It's part of the --

THE COURT: [Indiscernible] --

MR. YOUNG: It's part of the -- by March 1st it will be then, Judge.

THE COURT: Yes. Okay. So I think that's the --

MR. LIN: The documents to be exchanged regarding the breach of contract claims, I assume that goes both ways because our -- we have counterclaims involving various causes of action sounding breach of contract order, fraud including professional services rendered and fraud with respect to the website. So we would seek documents regarding, you know, the performance under the contract for professional services rendered and with respect to the website.

THE COURT: So your separate contracts that form the basis of your -- so those contracts obviously.

MR. LIN: Right.

THE COURT: Will be exchanged.

MR. LIN: Right, right.

THE COURT: Yes. Okay. So get as much time as you can in terms of voluntary disclosure of underlying documents that form the basis for your complaint, right? It'd give you the best way to see each other's positions and we forward the case before you had to do formal requests, right? It allowed [indiscernible].

You have a status conference for March 29th. I'm going to take that off and what I'll have you do instead is

you're going to continue with discovery and I'll have you come and see me after you meet with Judge Seybert on the 6th. So I'm not sure what time you have to be before her, but go to her conference and then when you're done just come here and let us know you're done and we'll see where we are. So that will give us a good opportunity for us to have a status conference and where we are in discovery.

MR. YOUNG: Just so you know, Judge, it's 2:00 p.m. on the 6th.

THE COURT: 2:00 p.m. Okay. Just come to me. I'm sure it won't take that long, so just come to me after that.

MR. YOUNG: Okay.

THE COURT: Okay. I left the motion before new parties remember the pleadings at April 15th. It's my guess there are no more parties or amendments. You've already amended twice. I think that date is going to mean anything. It's not going to mean any new pleadings in this case. We'll just leave it at that.

The other things I have moved up. This case is already looking on a year old and we don't want cases to be that old [indiscernible]. We like to move it along. And since you're already knowing what the cases are about, I'm doing first request for production of documents. Interrogatories are due by March 31st, 2016. I am closing all fact and expert discovery on October 6, 2016.

Let me ask you this. Do you think you are even going to have expert discovery in this case? Probably not.

MR. LIN: Well, with respect to the trademark claims we may need expert testimony as to, you know, the consuming confusion among the [indiscernible] --

MR. YOUNG: That would be the only possible issue.

THE COURT: Right. Okay. So keep that in mind. Maybe yes; maybe no. But I'm doing [indiscernible] October 6th for all fact and expert discovery. First step in dispositive motion practice will be October 14th and that's the first step before Judge Seybert which, I'm sure you know her rules by now, is the writing of the letters and issue requires [indiscernible] one statement in doing that. Just general relief for that. And again, completion of all discovery by October 6th, 2016, and I am not doing [ph.] the sufficient pretrial order yet at this point. So what I will do is upload new dates so that will be the discovery order [indiscernible] the case. Okay.

MR. YOUNG: Okay.

THE COURT: All right. Let me say, I'm encouraging you to talk to each other, talk to your clients about how long this has been going on, about the amount of money that is at stake and to see if you can work it out assuming these parties are no longer doing business. Is that right?

MR. LIN: That's correct.

MR. YOUNG: That's correct, Judge.

THE COURT: Okay. And we'll assume they're paying the lawyers a lot of money to litigate over [indiscernible] year and there's a lot of motion practice and it's expensive and I think the best thing for you to do is take a little time, take a break, talk to your clients, and see if you can come to an agreement on this matter because that's best for everyone.

All right. So do your discovery. I'll be seeing you again. If you need help it's [indiscernible]. Let me know. Check my set of rules [indiscernible].

MR. YOUNG: Thank you, Your Honor.

THE COURT: Okay. All right. Thank you.

MR. YOUNG: Thank you, Your Honor.

MR. LIN: Thank you.

(Proceedings concluded at 11:21 a.m.)

* * * * * *

I certify that the foregoing is a court transcript from an electronic sound recording of the proceedings in the above-entitled matter.

Ruth Ann Hager, C.E.T.**D-641

Dated: March 1, 2016